IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARY LOUISE SMITH and
TIFFANY E. SMITH                                                              PLAINTIFFS

v.                              No. 3:19-cv-82-DPM

ASHLEY HODGES, Individually as
school nurse at Carroll Smith
Elementary School, *et al.*                                                   DEFENDANTS

# ORDER

This civil rights case arises from Mary and Tiffany Smith's core allegation that various school officials and police officers from Osceola, Arkansas conspired to discriminate against them and remove their foster children because the Smiths are black. The Smiths have sued these state actors for violating their rights under the U.S. Constitution and several federal statutes. They also bring several tort claims under state law. The Court dismissed part of the Smiths' case last year, *Doc. 59*. The defendants seek summary judgment on the remaining claims. The deep issue is whether the various state actors are entitled to qualified immunity for reporting, investigating, and arresting the Smiths for suspected child abuse.

Some background facts are undisputed. Where there is some dispute, the Court takes the record in the Smiths' favor. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019). The Smiths' unopposed motion

for more time to respond on the merits, *Doc. 106*, and their unopposed motion to amend their responding statement of facts, *Doc. 113*, are granted.

In early 2016, the Smiths cared for six foster children. Two of them, D.W. and J.M., attended Carroll Smith Elementary in Osceola. The Smiths' difficulties began when assistant principal Dee Wallace became concerned that D.W. and J.M. were not receiving their prescribed medication. Mary says she started administering the medications herself, but didn't notify the school about her decision. Assistant principal Wallace eventually reported Mary for neglect to the Arkansas Child Abuse Hotline in March 2016. DHS found the March 2016 neglect report to be unsubstantiated.

A few weeks later, in early April 2016, school officials noticed marks on D.W.'s legs. D.W. told school nurse Ashley Hodges that Mary left the marks. Nurse Hodges photographed D.W.'s legs and filed a report of suspected child abuse with the DHS hotline. Nurse Hodges says DHS didn't respond. Later that week, D.W. was sent home from school for disruptive behavior. When Tiffany arrived at the school for D.W., several school officials heard her say that D.W. was "going to get it" when they got home. Tiffany testified on deposition that she punished D.W. with "three licks."

By the start of the next school week, school officials became increasingly concerned when they noticed fresh marks on D.W.'s legs.

After taking more photographs, nurse Hodges filed a second report of suspected child abuse. Nurse Hodges became concerned for D.W.'s safety when DHS failed to respond to her second report. So she contacted her husband, Terry Hodges, a lieutenant with the Osceola Police Department. Detective Hodges reviewed the photographs and opened an investigation.

Detective Hodges interviewed D.W at school. D.W. said that Mary and Tiffany punished him with extension cords, and that Tiffany used a cord to punish him when he was sent home early from school. Detective Hodges also spoke with school resource officer Steve Weaver, who had heard Tiffany's comment to D.W. Mary and Tiffany were later arrested for second-degree battery.

Detective Hodges conducted separate custodial interviews with Mary and Tiffany. Each signed a *Miranda* waiver and agreed to answer questions. Mary said that she used a cord to discipline D.W., and Tiffany acknowledged whipping D.W. with a cord when he was sent home for disruptive behavior. Mary and Tiffany appeared before Judge Betterton of the Mississippi County District Court. He found probable cause to charge both Mary and Tiffany with second-degree battery and ordered them to avoid contact with any child under the age of eighteen. Mary and Tiffany were each charged with one count of second-degree battery.

After Mary and Tiffany's court appearance, detective Hodges received a call from Arkansas State Police child abuse investigator Catherine Chlapecka. She said that J.M. appeared to have injuries consistent with D.W.'s. Investigator Chlapecka filed a report that substantiated the abuse allegations against the Smiths.

A month later, based on investigator Chlapecka's findings about J.M., detective Hodges prepared two affidavits in support of Mary and Tiffany being charged with an additional count of second-degree battery. Based on the affidavits, Judge Betterton issued arrest warrants and Mary and Tiffany were charged with that crime. He again ordered Mary and Tiffany to avoid contact with any child under the age of eighteen. Mary was eventually added to the Arkansas Child Maltreatment Registry. School officials received notice about the no-contact order and Mary's placement on the Registry.

More than a year later, Pamela Smith and Sandra Landry (school officials at a different elementary school in Osceola) notified police after they observed Mary enter the school and visit with her granddaughter at lunch. Smith and Landry believed Mary was violating the no-contact order. A warrant for Mary's arrest was issued a few days later.

Osceola patrol officer Sam Pollock went to the Smiths' home to arrest Mary for violating the no-contact order. Mary opened the front door and officer Pollock explained why she was under arrest. Officer Pollock eventually contacted his supervisor, defendant Mikal

Gonzalez, for assistance. Sergeant Gonzalez and defendant Dakota Dunkin (another Osceola patrol officer) promptly responded to the scene. Mary invited the officers inside but resisted their attempts to arrest her. She was arrested, though, and booked for violating the no-contact order and resisting arrest.

Almost two years after nurse Hodges first reported Mary for suspected abuse, D.W. recanted his allegations and all charges against the Smiths were nolle prossed. In late 2019, Mary's name was removed from the Registry.

The defendants are entitled to qualified immunity unless the Smiths can show some violation of their clearly established constitutional rights. *Kuessner v. Wooten*, 987 F.3d 752, 755 (8th Cir. 2021). Did the Osceola school officials and police officers have at least arguable probable cause—an objectively reasonable belief that their actions were necessary—to report, investigate, and arrest the Smiths for child abuse? *Bell v. Neukirch*, 979 F.3d 594, 607 (8th Cir. 2020).

The Court will consider the school defendants first. The Smiths don't allege any personal involvement in the asserted constitutional violations by Michael Cox, Alfred Hogan, or the John Does. The Smiths' allegations against these individuals therefore fail to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Smiths' only allegation about Tiffany Smithey is that she disciplined D.W. on some

-5-

unspecified date. *Doc. 3 at* ¶ 27. The Smiths' various allegations against her also fail to state a claim. *Iqbal*, 556 U.S. at 676.

Defendant Wallace is entitled to qualified immunity for reporting Mary about the issues with the children's medication. Mary admitted that she stopped sending the medications to the school and didn't notify the school that she was administering the medications herself. A reasonable school official in assistant principal Wallace's position could have believed that the children weren't receiving their prescribed medication. *Bell*, 979 F.3d at 607.

Nurse Hodges is entitled to qualified immunity for reporting Mary to the abuse hotline. She observed fresh lacerations on D.W.'s legs on two different occasions. D.W. told her that Mary left the marks. In the circumstances, it was reasonable to report the incident to the abuse hotline. And after DHS failed to respond, it was reasonable to contact the police. *Bell*, 979 F.3d at 607.

Finally, Landry and Smith are entitled to qualified immunity for reporting Mary for allegedly violating the no-contact orders. There's no evidence to support the Smiths' argument that these school officials knew, when Mary entered the school, that the no-contact orders had been lifted. Landry and Smith acted reasonably when they notified police. *Bell*, 979 F.3d at 607.

Next, the Osceola police officers. Detective Hodges had at least arguable probable cause to think D.W. and J.M. were being abused. He

reviewed the photographs of D.W.'s injuries taken by his wife; Mary and Tiffany each admitted that they used extension cords to discipline D.W.; and investigator Chlapecka concluded that J.M.'s injuries were consistent with D.W.'s. Based on these facts, detective Hodges prepared affidavits in support of Mary and Tiffany being charged with two counts of second-degree battery. There's no evidence that his affidavits included false information or omitted anything that would be critical to the finding of probable cause. *United States v. Gladney*, 48 F.3d 309, 314 (8th Cir. 1995). Detective Hodges is therefore entitled to qualified immunity. *Garcia v. City of New Hope*, 984 F.3d 655, 670 (8th Cir. 2021).

Sergeant Gonzalez and officer Dunkin are entitled to qualified immunity for arresting Mary at her home. There's no evidence that these officers had any role in the previous child abuse investigation. School official Sandra Landry signed an affidavit stating that she observed Mary at North Elementary. There's no evidence that these officers knew the no-contact orders were not in effect. They had at least arguable probable cause to arrest Mary for violating the orders. And the undisputed facts show that Mary resisted the officers' numerous attempts to arrest her. They are therefore entitled to qualified immunity. *Garcia*, 984 F.3d at 670.

There are some remaining claims. The Osceola school officials and police officers had at least arguable probable cause to suspect that

the Smiths were abusing two of their foster children. That foundation eliminates the other federal civil rights claims as a matter of law. *Riddle v. Riepe*, 866 F.3d 943, 948–49 (8th Cir. 2017). That leaves the many state law claims, over which the Court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1016–17 (8th Cir. 2015).

\* \* \*

The Smiths' motions, *Doc. 106 & 113*, are granted. Defendants' motions for summary judgment, *Doc. 79, 80 & 93*, are granted.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

16 July 2021